UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REX – REAL ESTATE EXCHANGE, INC., a Delaware corporation,

Plaintiff,

v.

ZILLOW, INC., a Washington corporation; ZILLOW GROUP, INC., a Washington corporation; ZILLOW HOMES, INC., a Delaware corporation; ZILLOW LISTING SERVICES, INC., a Washington corporation;; TRULIA, LLC, a Delaware limited liability company; and THE NATIONAL ASSOCIATION OF REALTORS, an Illinois trade association,

Defendants.

No. 2:21-cv-00312-TSZ

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND FOR DAMAGES

DEMAND FOR JURY TRIAL

1.      REX – Real Estate Exchange, Inc. ("REX") brings this action against Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., Trulia, LLC (collectively "Zillow"), and the National Association of Realtors ("NAR") under federal and state antitrust laws, the Lanham Act, and deceptive trade laws and alleges as follows:

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND FOR DAMAGES - 1
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

## I.   NATURE OF THE ACTION

2.   REX brings this lawsuit to keep the digital hubs of the real estate economy open so that consumers have the benefit of innovation and cost savings that come from competition. The internet has radically altered how Americans shop for homes.  For most consumers, home buying begins on a mobile device or laptop.  Consumers can search for homes by location, price, square footage, numbers of bedrooms and bathrooms, and other categories.  In an instant, consumers can view images of homes that fit their preferences—and much more.  The internet continues to evolve to satisfy the needs of home buyers.  In addition to finding properties, home shoppers can tour properties virtually.  Offers are now made online and closing documents are notarized on Zoom.

3.   Websites that aggregate homes for sale are the digital hubs of the new real estate economy.  They attract billions of views every year by gathering a vast inventory of homes and allowing consumers to customize their searches.  Search capabilities allow consumers to find individual residences within predefined parameters and then track properties that interest them. Consumers can now perform a substantial amount of their home searches online, at their leisure, instead of spending weekend after weekend at open houses and showing appointments.

4.   Aggregator sites facilitate transactions that allow millions of Americans every year to relocate for new personal and professional opportunities.  Home sellers know that interested buyers flock to aggregator sites and highly value having their homes listed on those sites.

5.   This democratization of access to real estate inventory changes the old dynamic. The NAR and Multiple Listing Services ("MLS") largely controlled access to real estate markets, and related brokerage services, because they controlled home inventory information. Direct consumer access to available homes—and the ability for non-NAR, non-MLS licensed brokers and agents to make homes directly visible to consumers—opens the pathway for new, innovative

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 2
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

real estate service providers.  And, critically, it introduces competition that benefits consumers through greater choice and downward pressure on traditionally high commission structures.

6.    REX co-founders Jack Ryan and Lynley Sides launched REX in 2015 to disrupt the traditional real estate model by putting consumers first.  REX's innovative model uses technology to enhance efficiency and drastically reduce brokerage commissions, while delivering a full suite of personalized services to clients.

7.    The legacy real estate industry transfers billions of dollars in commissions every year from home sellers to brokers.  In the typical real estate transaction under the traditional model, the seller is represented by an agent who collects a commission in the range of 2.5 to 3% of the sale price.  The thousands of dollars in commissions paid to the seller agent are only *part* of the commission fees.  Under rules written by NAR and enforced by its member MLSs, sellers must also make what is essentially a non-negotiable offer of compensation to any agent representing the ultimate purchaser, generally *another* 2.5 to 3% of the sale price—with total commissions averaging about 5.5%.  Total commissions in a REX transaction average 3.3%, representing a 40% discount. REX has already returned more than $29 million in commission savings to consumers and is on pace to save consumers more than $100 million annually.  On a $720,000 home sale—the median price in King County, where REX recently opened operations—consumers would save $16,000 in commissions using REX's data-driven, direct-to-consumer model.

8.    REX's innovative and competitive model is now threatened by the concerted action of the NAR and Zillow, along with their MLS affiliates.  Zillow recently joined NAR-affiliated MLSs and adopted their associational rules to conceal all non-MLS listings on Zillow's heavily trafficked websites.  These listing portals, as explained below, are critical channels to reaching consumers.  Zillow's recently implemented website changes make non-MLS listings accessible only via a recessed, obscured, and deceptive tab that consumers do not see, and even

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 3
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

professional real estate agents find deceiving.  The result is that REX's listings are losing significant traffic, severely impacting REX's reputation, its ability to execute its innovative and disruptive business model, and driving consumers away from REX and back into the MLS regime, ensuring higher commissions that benefit NAR's members.

9.     If the NAR and its MLS partners, which now include Zillow, are allowed to once again close off transparent access to home inventory by entering into agreements among themselves that disadvantage all but their own membership, consumers and competition will suffer.

## II.     THE PARTIES

10.     Plaintiff REX is a Delaware corporation in good standing, incorporated as REX - Real Estate Exchange, Inc., with its principal place of business at 3300 N Interstate Hwy 35, Suite 149, in the City of Austin and State of Texas.

11.     Defendant National Association of Realtors is a trade association organized and existing as a non-profit corporation under the laws of the State of Illinois with its principal place of business at 430 N Michigan Avenue in the City of Chicago and State of Illinois.  NAR has members residing in the State of Washington and within this District.  NAR may be served through its registered agent.

12.     Defendant Zillow, Inc. is an online real estate marketplace company. Zillow, Inc. is a general corporation organized and existing under the laws of the State of Washington with its principal place of business at 1301 Second Avenue, FL 31, in the City of Seattle and State of Washington.  Zillow, Inc. maintains real estate brokerage licenses in a number of states.  It may be served through its registered agent.

13.     Zillow Group, Inc. offers online real estate services and is a general corporation organized and existing under the laws of the State of Washington with its principal place of

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 4
Case No.: 2:21-cv-00312-TSZ

business at 1301 Second Avenue, FL 31, in the City of Seattle and State of Washington.  It may be served through its registered agent.

14.     Zillow Homes, Inc., is organized and existing under the laws of the State of Delaware, with its principal place of business at 1301 Second Avenue, FL 31, in the City of Seattle and State of Washington.  It maintains real estate brokerage licenses in a number of states. It may be served through its registered agent.

15.     Zillow Listing Services, Inc. offers miscellaneous real estate services.  It maintains real estate brokerage licenses in a number of states.  It is a general corporation organized and existing under the laws of the State of Washington with its principal place of business at 1301 Second Avenue, FL 31, in the City of Seattle and State of Washington.  It may be served through its registered agent.

16.     Trulia, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 1301 Second Avenue, FL 31, in the City of Seattle and State of Washington and its sole governor is Zillow, Inc.  It is a real estate website.  It may be served through its registered agent.

## III.    JURISDICTION AND VENUE

17.     Plaintiff REX brings this action seeking injunctive relief, damages, treble damages, cost of suit, and reasonable attorneys' fees, arising from Defendants' violations of Section 1 of the Sherman Antitrust Act, 15  U.S.C. § 1 and Section 1125 of the Lanham Act, 15 U.S.C. § 1125.  This Court has subject matter jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation).  Plaintiff has standing to bring this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 5
Case No.: 2:21-cv-00312-TSZ

18.     Plaintiff's state law claims, including under the Washington Consumer Protection Act, RCW Ch. 19.86, arise out of the same factual nucleus as Plaintiff's federal law claims. This Court has subject matter jurisdiction of Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367, which should be exercised in the interests of judicial economy, convenience, and fairness.

19.     This Court has personal jurisdiction over Zillow and NAR and venue is proper here pursuant to 28 U.S.C. § 1391(b)(2). Zillow Defendants are headquartered and/or organized in Washington and have engaged in acts in furtherance of an unlawful restraint of trade within the state and this District. Zillow's own Terms of Service specify exclusive venue in state or federal court in King County, Washington.

20.     NAR regularly transacts business within Washington and this District. In 1908, the predecessor to Seattle King County Realtors became one of "19 charter members" of the NAR, with which they are still affiliated, noting that local members enjoy the "added security of a team of advocates standing with them and for them, to protect their interests, from Seattle to Olympia to D.C." This Seattle/King County affiliate of NAR is headquartered in Bellevue, Washington. NAR has also committed substantial acts in furtherance of its illegal restraint of trade within the state and this District.

21.     REX employs licensed real estate agents and has real estate listings in this District and in other locations across the country, all of which have been affected by Zillow's change in web display. Zillow operates its website, including the new web display, within this District.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 6
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

## IV.    FACTS

**A.    Traditional NAR/MLS Residential Real Estate Brokerage Services**

22.    Brokers, agents, and REALTORS® participate in the marketplace for residential real estate brokerage services in local markets throughout the United States.  Brokers and agents are licensed by the state through education programs and successful completion of a real estate exam.  Brokers can work independently or employ other agents through their own brokerage. Agents work for a supervising broker to facilitate real estate transactions, bring buyers and sellers together, and are paid a commission. Some agents are also REALTORS®. REALTORS® are members of the NAR.

23.    NAR is the nation's largest trade association, boasting 1.45 million members, 54 state and territory associations, and approximately 1,130 local associations.  The mission of the NAR, as stated by the organization's CEO Bob Goldberg, is to advance the interests of its members.  In a recent speech, Goldberg explained the NAR's top priorities: "First and foremost, it's imperative that we are not just the National Association OF REALTORS®, we are also the National Association FOR REALTORS®." (emphasis in original).[1]

24.    The NAR controls a large portion of MLSs through local associations of realtors, which are members of and governed by the NAR.  The reach of NAR is extensive, as demonstrated by NAR's map of affiliated MLSs.[2]

---

[1] CEO Update – 2017 Board of Directors, https://www.nar.realtor/ceo-update-2017-board-of-directors (last visited Mar. 6, 2021).
[2] MLS Map of the National Association of Realtors®, NAR, https://www.nar.realtor/mls-map-ofthe-national-association-of-realtors (last visited Mar. 6, 2021).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 7
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

25.     Based on statistics cited by the NAR, there are approximately two million active real estate licensees in the United States. At least seventy percent of active licensees are NAR members.[3]

26.     Despite the size and scope of the NAR and its affiliates, obtaining a state license to represent consumers as a broker or agent is not conditioned on membership in the NAR, MLS, or any other private association.

27.     In other words, licensed real estate professionals can compete outside the NAR and MLS strictures, or could effectively compete, absent anticompetitive interference from the NAR and MLSs.

28.     The NAR is the rare trade association that sets the rules of competition among its members. The rules of the NAR and its member MLSs stray far beyond ethical guidelines. NAR and MLS rules specify in detail how listings must be presented. They have mandates governing

[3] National Association Realtors, *Quick Real Estate Statistics*, nar.com, https://www.nar.realtor/research-and-statistics/quick-real-estate-statistics (last visited Feb. 26, 2021).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 8
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

mutual data exchanges and the structure of compensation offers. MLSs even discipline members with financial penalties. Because of the size and scope of the NAR and MLSs, these rules have become ubiquitous within the marketplace—essentially making consumers subject to them.

29.    Real estate brokers and agents are compensated through the commissions they earn on transactions. Seller agents represent the homeowner. These agents are often referred to as "listing agents" because they place their clients' properties on one or more lists of available homes for sale. Buyer agents represent clients interested in purchasing a home for sale.

30.    Unlike the standard arrangement in other agency businesses, home sellers and buyers generally do not pay their brokers separately. Instead, under a decades-old NAR rule, sellers agree upfront to pay commissions owed to the brokers on both sides of the deal. Under the Buyer Agent Commission Rule, which is standard across many MLSs, sellers must make a predetermined offer of compensation to the agent representing the *buyer*. REX is the exception to this expensive business practice rife with conflicts of interests.

31.    While sellers can offer any amount of compensation to buyer agents under the NAR rule, seller agents instruct their clients that they need to induce buyer agents to bring clients who may be interested in their homes. The takeaway is that sellers should offer the highest marginal price. A script for seller agents from the brokerage firm Keller Williams illustrates this dynamic:

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 9
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

## Explaining How Commission Is Used: Script #4

SELLER:        *Can you reduce your commission?*

AGENT:        Of course. As you know, commissions are negotiable. But let me ask you—what are you trying to accomplish by getting me to reduce the commission?

SELLER:        *I'm trying to save money.*

AGENT:        I understand. Do you know how a commission structure works?

SELLER:        *Not really. I just know that I have to pay you a certain amount of what I receive for my house, and that means I get to keep less.*

AGENT:        Let me explain what happens when you reduce a commission. First of all, half of the commission usually goes to a cooperating agent. When you reduce the commission, you reduce the incentive for that agent to bring a buyer to your house. If an agent has ten different houses, nine of which come with a 3 percent commission, one of which comes with 2.5 percent commission, which houses do you think they're going to show?

SELLER:        *The ones with the larger commission.*

AGENT:        Absolutely. You're putting yourself at a disadvantage competitively when you reduce your commission, wouldn't you agree?

SELLER:        *I guess that's true.*

32.    As the above script and extensive economic studies demonstrate, buyer agent commissions are not pegged to the amount of work performed or skill displayed by the agent representing the home buyer. And it is virtually impossible for buyers to negotiate down buyer agent commissions during the transaction. Buyer agents are prohibited from urging the buyer to negotiate with the seller directly. And once a seller agent has received an offer on a property, the seller agent and the buyer agent are prohibited from attempting to modify the buyer broker agent commission unilaterally.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 10
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

33.     These industry practices, including mandated NAR-endorsed MLS member rules, preserve sky-high real estate fees across the United States. "Essentially, the MLS listing," one commentator explains, "acts as a tool which competing brokers can use to help enforce a near uniform commission rate and drive out discounters."[4] Industry insiders agree with this assessment. For example, the brokerage firm and MLS-member Keller Williams candidly admits in its instructional materials that offering less than 3% in buyer agent commissions on an MLS "will reduce the number of willing and qualified buyers that will see your home." The interbroker compensation steers consumers to high-commission properties and stifles price competition in the $100 billion market for real estate brokerage services.[5] An attorney who has represented many MLSs suggests that ending mandatory payments from sellers to buyer brokers would allow buyer-side agents to price their services in line with their skill, experience, and the client's needs. There would no longer a "standard" or going rate for buyer agent fees.[6]

34.     The largest brokerage firms, including Redfin, Coldwell Banker, RE/MAX, Keller Williams, Compass, and Century 21 are distinguished by their faithful support of NAR and willing participation in the MLS. In stark contrast to traditional brokerage firms, REX has always maintained its independence from the NAR/MLS chokehold.

---

[4] Bradford W. Muller, *Encouraging Price Competition Among New Jersey's Residential Real Estate Brokers*, 39 Seton Hall L. Rev. 665, 683 n.100 (2009).

[5] A Government Accountability Office report describes how steering works: "When choosing among comparable homes for sale, brokers have a greater incentive — all else being equal — to first show prospective buyers homes that offer other brokers the prevailing commission rate than homes that offer a lower rate." U.S. Gov't Accountability Office, GAO-05-947, REAL ESTATE BROKERAGE: *Factors That May Affect Price Competition*, 13 (2005); *see also* Panle Barwick, Parag Pathak, and Maisy Wong, *Conflicts of Interest and Steering in Residential Brokerage*, American Economic Journal: Applied Economics 9(3), 191–222 (empirically substantiating the concerns that steering explains the general uniformity of commission rates).

[6] Brian N. Larson, *The End of the MLS as We Know It*, Inman (Aug. 15, 2006).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 11
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

35.     Under the NAR/MLS regime, real estate commissions in the United States are two to three times higher than in comparable international markets.[7] Americans spend an estimated $100 billion annually just on the commissions for buying and selling homes.

36.     To put these costs in perspective, on a $720,000 sale—currently, the approximate median price for home sales in King County, Washington—consumers surrender upwards of $40,000 in real estate brokerage commission fees. Despite the widespread adoption of online home searching, which dramatically reduces the labor requirements for agents, brokerage service fees remain largely unchanged and untethered to the effort expended.

37.     NAR rules are currently the target of numerous federal cases alleging illegal restraints on trade. Last year, the United States Department of Justice announced a simultaneous lawsuit and settlement with NAR concerning four anticompetitive rules widely enforced across NAR-affiliated MLSs: (1) NAR's Global Commission-Concealment Rules through which MLSs prohibit the disclosure of offers of compensation to buyer brokers; (2) NAR's Free-Service Rule through which buyer brokers misrepresent to buyers that their services are free; (3) NAR's Commission-Filter Rules and Practices, which enable buyer brokers to filter listings based on the level of buyer broker commissions offered and thereby exclude homes with lower commissions from consideration by potential home buyers; and (4) NAR's Lockbox Policy, which limits access to the lockboxes—and therefore access to the homes themselves—to only brokers who are members of a NAR-affiliated MLS. According to DOJ's complaint, these rules "reduce price competition among brokers and lead to higher prices and lower quality service for American home buyers and sellers."

---

[7] Panle Jia Barwick & Maisy Wong, Competition in the real estate brokerage industry: A critical review, Brookings Institute (Dec. 2019) at 8; *Moehrl v. Nat'l Ass'n of Realtors*, 2020 U.S. Dist. LEXIS 182532, at \*28 (N.D. Ill. Oct. 2. 2020) (stating that U.S. real estate commission rates are "sufficiently higher than in comparable international markets.").

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 12
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

38.     Four other pending cases filed by consumers in district courts in Illinois, Missouri, and Massachusetts challenge agent commissions.  Plaintiffs in these cases transacted through the MLS and allege that they paid inflated prices due to the Buyer Broker Compensation Rule.  Two of these four cases were filed subsequent to the DOJ action, *Bauman v. MLS* and *Leeder v. NAR*. The other two, *Moehrl v. NAR* and *Sitzer v. NAR*, were filed in 2019, and have survived motions to dismiss.  As the district court judge presiding over *Moehrl* noted, "it is easy to understand how" the Buyer Broker Commission Rules "could plausibly result in inflated commission rates." *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-CV-01610, 2020 WL 5878016, at *9 (N.D. Ill. Oct. 2, 2020).  The arrangement allows for only the "hypothetical possibility" of negotiating anything lower than the standard 2.5% to 3% of the total home sale typically paid out to buyer brokers.[8]

### B.     The REX Model

39.     REX is a licensed broker in a number of states nationwide and employs salaried, licensed real estate agents, including in Washington State.  REX competes with traditional brokers and agents—generally members of the NAR and/or MLSs—to provide residential real estate brokerage services to consumers wishing to buy or sell homes.  REX routinely represents consumers on one side of the transaction while a traditional NAR or MLS member agent represents the counterparty.

40.     But unlike NAR/MLS brokers who market homes through high-dollar commission offers to other brokers, REX uses digital technology to market the home directly to

---

[8] In *Sitzer*, the district court similarly ruled that plaintiffs pled a cognizable antitrust claim.  The court's opinion denying the motion to dismiss referenced the incentive for buyer agents to steer clients towards homes whose sale necessarily results in artificially high commissions: "buyer-brokers can use their access to MLS information (unavailable to potential home buyers) to view details about the offered levels of buyer-broker compensation and dissuade clients from viewing or purchasing homes with lower buyer-broker commission offers, thus 'steering' them to properties with higher-paying commissions." *Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 915 n.4 (W.D. Mo. 2019).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 13
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
**1111 THIRD AVENUE, SUITE 3000**
**SEATTLE, WASHINGTON  98101-3292**
**PHONE (206) 447-4400**

consumers looking to buy, sell, and manage their home. According to industry data, ninety percent of consumers search online for a home. Seventy-three percent of consumers reported using a mobile/tablet device or app for their home search. And sixty-eight percent of online buyers find their home without an agent. REX's platform allows direct-to-consumer reach and reduces customer acquisition costs. Through REX's proprietary technology, consumers can list their homes from their smartphones and see their listing go live within two days with ads specifically targeting interested buyers. REX's ad generation algorithms generate personalized ads targeting online home shoppers. Through REX's end-to-end customer service experience, consumers can easily search, shop, transact, manage, and move into the home of their dreams.

41.     REX's model is working.   Rather than the average national brokerage commission rate of roughly 5.5%, which includes listing and buyer agents' commissions, REX's clients spend, on average, only 3.3% in total commissions with the anticipation of driving the costs still lower.

42.     Using its model over the past five years, REX already has saved consumers more than $29 million in commissions. Not surprisingly, REX's revenues have grown every year.

43.     REX is now active in markets spanning twenty states and jurisdictions including Arizona, California, Colorado, D.C., Florida, Georgia, Illinois, Massachusetts, Maryland, Minnesota, Nevada, New York, New Jersey, North Carolina, Oregon, Pennsylvania, Texas, Utah, Virginia, and Washington.

44.     REX is driving real estate commissions down for the same reason that transaction costs have plummeted across the service economy. Over the past several decades, advancements in information technology have slashed the fees once captured by middlemen, agents, and brokers. Online travel sites have made business and leisure travel costs more transparent and competitive. Charles Schwab, Ameritrade, and Robinhood have made no-commission or low-commission stock trades the new normal. Uber and Lyft have lowered the cost of transportation.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 14
Case No.: 2:21-cv-00312-TSZ

DoorDash, Grubhub, and Instacart have reduced food delivery costs. Airbnb has made lodging more affordable. Even life insurance policies are cheaper due to internet-driven price competition. REX's mission is the same.

45.     By combining digital technology with an honest approach to every consumer relationship, REX aims to usher in an era of zero-commission home sales where consumers would be free to move about the country without the enormous personal expense in brokering a home. Americans would enjoy enhanced job mobility and educational advancement and a greater chance at wealth creation for middle-class families when the transaction costs of buying a home are reduced. The volume of home transactions has been flat over the past two decades, despite a more-than-twenty-percent increase in the number of households. The increase in the volume of home sales driven by lower transaction costs would spur the creation of new jobs at higher wages for electricians, plumbers, carpenters, and other trades whose demand for services clusters around the purchase and sale of homes.  Moreover, states and municipalities that fund their police, fire, and teachers through real estate transfer taxes would benefit from the uptick in sales volume.

**C.     The Importance Of Internet Aggregator Sites Like Zillow**

46.     Since REX launched in 2015, the company has utilized aggregator sites to market clients' homes.  Because many interested buyers start their home search on aggregator sites, these digital hubs are a critical channel for REX. Because REX markets directly to consumers interested in buying a home at a lower transaction cost, aggregator sites facilitate REX's ability to reach a large audience of potentially interested buyers. Thus, these aggregator sites help REX, and its clients, to maneuver around the NAR/MLS cartel's high-commission strictures.

47.     Before aggregator sites like Zillow, information about homes for sale was controlled entirely by Defendant NAR's broker cartel.  Not long ago, consumers went to agents who furnished their clients with books or computer print offs of MLS listings. Crucially, the

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 15
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

agent was the gateway for listing data. That slowly began to change when the NAR and MLSs began allowing certain—but not all MLS—listing data to appear on public facing websites such as the NAR-licensed Realtor.com. Notably, the NAR rules provide that listings from MLSs must be segregated from any non-MLS listings.

48.    Independent real estate aggregator sites made the market far more accessible to consumers—giving them direct access to see available homes. They largely removed information asymmetry between consumers and real estate agents. Consumers could shop for a home without an agent. Aggregator sites upended NAR/MLS control over listing data.

49.    Zillow stated in its 2018 10-K filing with the Securities and Exchange Commission that one of its "competitive advantages" was its:

> *Independent Market Positions and Consumer Focus.* Zillow Group has been built independent of any real estate industry group. We maintain an unwavering commitment to giving consumers free access to as much useful information as possible. We provide information, products and services, designed to empower consumers to make informed decisions about homes and the residential real estate market. We believe our independence enables us to create compelling products and services with broad consumer appeal.

50.    According to data reported in Zillow's 2018 10-K, "Zillow Group brands represent nearly three quarters of market share of all mobile exclusive visitors to the real estate category."

51.    The NAR and MLSs well understand the competitive threat that internet transparency presents. The NAR has conducted studies showing that consumers use the internet as a resource when transacting homes more frequently than any other avenue—even more than professional agents and brokers. NAR's same study indicated that *more potential home buyers began their search for a home on the internet than in any other place*.

52.    Maybe most telling, the NAR's own research shows that fifty-two percent—*more than half*—of home buyers found the home they bought on the internet.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 16
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

53.     Zillow and Trulia are the first- and fourth-most-visited aggregator sites in the United States.  In 2015, the Federal Trade Commission approved the merger between Zillow and Trulia, paving the way for the rise of a behemoth hub site.  Zillow's sites, Zillow, Trulia, and StreetEasy, received more than 9.5 billion visits in 2020, and over 200 million unique users (as defined by Zillow) each month, with information on approximately 135 million homes.  Zillow is undoubtedly a dominant doorway into the residential real estate market—as Zillow itself notes that "more people search for 'Zillow' than 'real estate.'"

54.     The second-most-visited aggregator site, realtor.com, is licensed by NAR and, as such, has never been open to non-NAR, non-MLS brokers like REX.

55.     As Zillow attracted visitors, it also provided home sellers with leverage.  Zillow offered sellers access to consumers unimpeded by the traditional broker gatekeepers.  Brokers such as REX, which help consumers sell homes outside of the MLS system, could list homes on Zillow alongside homes listed by competing brokers who were members of the NAR/MLS cartel.  When an interested buyer searched Zillow according to selected criteria, homes within those parameters were displayed—regardless of whether they were listed by an NAR/MLS-affiliated broker.  Zillow functioned as a genuine digital hub.  It displayed the listings in accordance with the preferences expressed by the consumer conducting the home search.  Within Zillow, homes listed by brokers inside and outside the MLS stood on equal footing.

**D.    Zillow Agrees To Degrade Non-MLS Listings Upon Joining NAR And MLSs**

56.     But that all changed when Zillow joined the NAR and MLSs.

57.     In 2018, Zillow became an ibuyer.  An ibuyer gives a cash offer to a homeowner at a larger discount to the home's market value in return for offering the convenience of a speedy transaction to those who wish to sell quickly.  If the homeowner accepts the offer and the transaction closes, ownership transfers to the ibuyer.  Zillow's ibuying arm is called Zillow

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 17
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

Offers. Zillow is now transacting thousands of homes annually through its Zillow Offers brand. On information and belief, the growth and substantial inventory of Zillow-owned homes placed Zillow in a new position: Instead of focusing on being an open access point for consumers to display and access residential real estate listings, Zillow's interests turned to its own substantial home inventory.

58.     With some fanfare, Zillow announced in the fall of 2020 that it would "no longer [be] a third party," but an MLS participant joining "local and state associations, and the National Association of Realtors," standing "shoulder-to-shoulder" and "locking arms with like-minded partners like you." Leaving nothing to doubt, Zillow signaled its dedication to the legacy MLS model—and inflated commissions—by committing that "all Zillow-owned homes will be listed in MLSs with commissions paid to agents representing buyers." The NAR rule mandating offers of commissions to buyer agents, now adopted by Zillow, is the paramount reason that real estate commissions are two to three times higher in the United States than in comparable international markets.

59.     Zillow also publicly promised to use its considerable reach to enforce the NAR's and its affiliated MLSs' grip on the market, stating that it would use MLS data feeds to populate its website. Zillow did not, however, specify either how or when it would implement the change.

60.     In coopting Zillow, the NAR/MLS cartel blunted a threat to its expansive membership, again erecting hurdles to prevent consumers from escaping the pricey clutches of the traditional realtor regime. When Zillow entered the cartel, it agreed to segregate, conceal, and demote non-MLS listings. Zillow—the one-time source of listing information about all homes for sale—is now boycotting brokers that operate outside the NAR/MLS regime.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 18
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400



61.    The screenshot above shows what Zillow's website looked like before it implemented the MLS segregation policy.  As the search bar indicates, the web display shows the results of a search for homes in "Irvine, CA."  In this version of the site, the user who searched for homes in Irvine saw every home listed on Zillow in that region.  Homes are depicted by the red dots on the map.  Users could also drill down into a list of available homes using the filter buttons on the top of the screen.  On the right side of the screenshot, the user sees images of homes within the search criteria.  Here, the images are of homes for sale in Irvine sorted by the newest listings.

62.    The earlier version of Zillow's website jointly displayed REX homes with homes listed by other brokers on the same screen.  If a REX home was within the user's search parameters, the home appeared on the map.  The earlier site similarly displayed images of REX homes alongside images of homes listed by other brokers.  There was no concealment of listings by non-cartel members, and no extra steps needed to view a REX home that was within the consumer's price range and taste.  Zillow's prior display allowed home seekers to filter homes by price, square footage, bedrooms, size of lot, distance to school, and other criteria associated

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 19
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

with observable consumer preferences for various home features. To REX's knowledge, no consumer has ever searched for a home by the broker representing the *other* party in the transaction or by whether a home is listed by a broker who is a dues-paying member of the NAR/MLS regime. No consumer has ever asked REX to show only homes represented by a particular agent or broker, nor has any seller asked to limit showings of their home to only those potential buyers represented by a particular broker or agency.

63. Without any significant warning, Zillow unveiled its newly designed web display in mid-January 2021. The new web display creates a separate page, concealed behind the primary results, where REX homes are now funneled. Below is a screenshot showing the new display:



64. At first glance, the difference is hardly apparent. But the new web display now segregates all homes listed on Zillow into two categories: "Agent Listings" and "Other Listings". On the right side of the screenshot above—just above the home pictures—two tabs are now

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 20
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

visible. The first tab, titled "Agent listings," displays homes listed by MLS agents. The label is incorrect: the tab is not all agent listings, but exclusively *MLS* agent listings. Non-MLS agents are excluded. The second tab, labeled "Other listings," presents all non-MLS homes, including homes listed by licensed agents that are not part of the MLS. Homes listed by REX's licensed agents have been relegated to this second tab. Neither of these tabs was present on the earlier version of Zillow. This new web display includes several features that degrade Zillow's quality from a user's perspective and insulate MLS brokers from competition. There is no consumer benefit from putting REX homes in a separate category. Moreover, from Zillow's point of view, the company incurred upfront costs—and continues to incur ongoing costs—by segregating non-MLS listings under a hidden tab.

65. Importantly, the new default when users search on Zillow is the "Agent" tab. Thus, a homebuyer visiting Zillow sees only the MLS offerings, unless they notice the "Other" tab and do extra work to figure out what is being concealed behind this misleading and unflattering label. Zillow no longer allows consumers to see every home for sale in a single screen. When consumers on the new site search for a home listed on Zillow within a certain price, their search results no longer surface all listed homes within the consumer's price range on one screen. With the current web display, consumers only see a portion of homes based on whether they are viewing or searching homes within the Agent tab or the Other tab. To see every home listed for sale, they must move back and forth between these tabs. The redesigned site unreasonably suppresses vital information about homes for sale that meet consumers' search criteria.

66. In Zillow's new web display, REX's homes are grouped with the "Other listings" category. The classification is not only inaccurate and nonsensical, it is misleading and deceptive.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 21
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

67. Every REX home is listed by a licensed real estate agent. Membership in the NAR and MLS trade groups are not conditions precedent to becoming an agent. Agents are licensed by states. Every REX agent is duly licensed by the appropriate state authority responsible for regulating the practice of real estate.

68. Zillow knows, of course, that REX is a licensed broker with licensed agents. REX currently pays Zillow to be a part of Zillow's Premier *Agent* program. Under this program, Zillow, for a fee, allows REX agents to be displayed, and hopefully contacted, by consumers searching for homes in a given area (regardless of whether the home(s) that surface in the display are REX or other broker listings). REX *agents* can be, and are, classified as premier agents by Zillow, yet REX homes are all categorized under the Other tab, not the Agent tab. Zillow describes REX as an "agent" when REX pays Zillow to be highlighted as such, but now deceptively categorizes REX's home listings in the "other" non-agent category. Zillow's concealment of REX listings to the other category conveys to consumers that REX agents are not licensed agents.

69. Zillow has implemented this change nationwide on its websites Zillow.com and Trulia.com.

70. As a result of Zillow's new deceptive and anticompetitive display, few consumers will see all homes for sale. Top sites, Zillow, Realtor.com, and Trulia now all have restrictions based on NAR and MLS guidelines. Realtor.com only accepts homes listed by NAR members. Zillow's redesign on Zillow.com and Trulia.com now degrades non-MLS listings by placing them in the "other" listing category under NAR/MLS rules. In its current state, the NAR/MLS regime has once again wrested control and is excluding non-members through the anticompetitive application of their rules to enforce high commissions.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 22
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

**E.     Zillow's Compliance with NAR's Rules Was Reviewed and Enforced by NAR's Multiple Listing Services**

71.     NAR, as a trade association, operates through its members and its members' actions. Its members have the right to hold themselves out to the public as Realtors®, NAR's trademarked brand.

72.     NAR requires its members—including Zillow—to comply with a Code of Ethics though sanctions including the risk of expulsion and penalties. Many NAR-affiliated MLSs require NAR membership, so the loss of NAR membership may result in a loss of access to MLS services.

73.     NAR requires its affiliated Multiple Listing Services to comply with NAR Rules, including the mandatory offer of compensation rule and the mandatory co-mingling rules.

74.     NAR authorizes its members to enforce its rules by and through the Multiple Listing Services affiliated with NAR.

75.     NAR implements its rules by and through its members and the Multiple Listing Services acting to enforce and implement the rules.

76.     NAR creates its rules through the participation of its members.

77.     NAR wants, and instructs, its members to comply with its rules.

78.     NAR tells its affiliated Multiple Listing Services that if they do not follow NAR-approved rules then they are not entitled to insurance coverage and NAR may revoke their charters.

79.     It is NAR's intent that all member Multiple Listing Services comply with NAR's policies.

80.     Upon information and belief, NAR reviews member compliance to ensure members follow and implement NAR's rules.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 23
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

81.     NAR had knowledge of, and approved of, Zillow's decision to become a member of NAR.

82.     When Zillow joined NAR and its affiliated MLSs, it agreed and was required to follow their rules, including the mandatory compensation rule and the co-mingling and segregation rules.[9]

83.     Some NAR MLSs required Zillow to make changes to its display products, including moving of REX listings to "Other Listings".

84.     Some NAR MLSs reviewed Zillow's proposed new display to ensure compliance with NAR rules before Zillow implemented the change.

85.     Some NAR MLSs approved of Zillow's new display.

86.     NAR rules required its members, including its affiliated MLSs, to enforce Zillow's compliance with NAR rules.

87.     Upon information and belief, NAR was aware that its members, by and through its affiliated MLSs, were reviewing and enforcing Zillow's compliance with NAR rules.

88.     Zillow's moving of REX listings to "Other Listings" was done to comply with NAR's co-mingling rules, including the segregation rule.  Zillow has stated that it would not have relegated REX listings to the "Other Listings" tab if not required to do so by NAR-affiliated MLSs.

**F.      The Resulting Harm To Competition**

89.     The "Other listing" category significantly conceals REX's listings behind the primary results.  Because the default option is the "Agent listing" tab, many consumers will never click on the tab that includes REX homes.  It is likely that many consumers will never even

---

[9] NAR's mandatory rule 18.2.10  permits "co-mingl[ing of] listings of other brokers received in an IDX feed with listings available from other MLS IDX feeds, provided all such displays are consistent with the IDX rules" allowing "consumers … to execute a single property search of multiple IDX data feeds … on a single search results page … ."

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 24
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

notice the "Other listings" tab. Further, the "Other listing" tab is placed to the right of the "Agent listing" tab. Web display data demonstrates that users presented with side-by-side tabs are far more likely to click on the tab to the left.

90.    Zillow's new web design has cost REX both customers and revenue. Views of REX homes have plummeted on Zillow. The sharp decline in visibility has driven down the rest of REX's business. Fewer online viewers mean fewer interested buyers visiting REX homes. And fewer showings resulted in a corresponding drop in sales and thus lost brokerage service revenues to REX. By cutting off demand for the hidden homes on the "other" tab, Zillow and NAR are also harming the sellers of these homes—causing them to maintain the home for more days on market and accept lower sales prices.

 of the decline in ᴵanged display:

92.    In addition, REX has lost *seller* clients as a result of Zillow's website display change. Home sellers have terminated their exclusive contracts with REX out of the legitimate concern their homes will not attract buyers now that Zillow and the MLS are treating REX listings as second-class. Sellers who entrusted REX with the responsibility of selling their home have had the unwelcome surprise of no longer being able to find their homes on Zillow.

93.    Underscoring the confusion and harm, some REX clients have been contacted by other real estate agents who have seen the REX client's property listed in the "Other listings" category and believed the REX client to be unrepresented by a licensed broker. The clear implication is that the "Agent" tab includes *all* of the homes listed by agents and therefore any

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 25
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

home in the "Other" tab must have an unrepresented seller. Even experienced real estate participants are confused by the deceptive labelling of Zillow's cartel-friendly redesign.

94. The "other" category groups REX homes with For Sale by Owner (FSBO) and foreclosure properties. This is harmful for several reasons. FSBOs and foreclosures are a small percentage of the total homes for sale in any market. As a result, the "Other listings" tab will include far fewer listings than the default "Agent listings" tab. In the screenshot above, for example, there are 616 Agent Listings versus only 77 Other Listings. Consumers are much more likely to search only within the larger pool of "Agent listings," where they can more easily perform price comparisons of nearby properties for sale. Interested buyers are likely to continue avoiding or missing "Other listings" altogether.

95. To the extent that consumers view homes in the "other" category, they will see REX homes alongside FSBOs and foreclosures. But those properties present a buyer experience easily distinguished from purchasing a REX home. Consumers who purchase FSBOs must negotiate directly with the homeowner. Buyers of REX homes negotiate with a licensed REX agent. And, in the event the buyer of a REX home does not already have an agent, REX will assign a separate, experienced agent to represent the buyer at no cost to buyer or seller. Foreclosures signal to many consumers that there will be legal complications around the condition of the home and questions as to the status of the title. Moreover, homes in foreclosure also connote the risk that the home may be distressed due to lack of upkeep due to lack of funds. Zillow's new display leads consumers to view REX homes as riskier and more complicated properties to purchase. Interest in REX homes has already fallen and will continue to fall because of Zillow's unfair and deceptive business practice.

96. Consumers—buyers and sellers—now experience reduced choice in transacting real estate. Sellers, as noted above, may feel forced to do business with the NAR/MLS cartel to have superior placement on Zillow's dominant website, while buyers may never see their best

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 26
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

options because REX's listings (and all others in the "Other listings" category) are demoted. Defendants' coordinated conduct drives consumers to homes listed on the high-commission MLS network. Competition from REX, which allows buyers and sellers to lower commissions to get more home for their money, is suppressed, and REX loses customers. The result stifles competition from independent brokers such as REX, which save consumers thousands of dollars in reduced commissions on every home transaction.

97.    The effect of these anticompetitive practices harm REX in each of the twenty states and jurisdictions where it currently operates, and it harms consumers REX wishes to serve within those markets as well as consumers moving into those markets from outside the state. Because Zillow's universal display change concealing non-MLS listings is implemented nationally, consumers' and competitors' participation in interstate commerce is broadly impacted.

**G.    The Root Of The Harm Lies Within NAR/MLS Anticompetitive Rules**

98.    MLSs serve to effectuate and enlarge the power of the NAR. Courtney Poulus, a member of the board of directors for the Greater Los Angeles Realtors Association, describes the manner in which participants are forced into a set of the NAR's model rules. She states, "[w]hat I see the role currently of the MLS is as a kind of a police force," promoting the "very restrictive enforcement of [National Association of Realtors] new policies."[10]

99.    Zillow, in announcing its move to join the NAR and MLSs, stated unequivocally that it was standing shoulder-to-shoulder and locking arms with NAR and MLS members, including agreeing to move to a preferencing of MLS-only (IDX) data feeds.

---

[10] Andrea Brambila, *Broker warns MLSs: Help us compete against Zillow or lose us*, Inman (Jan. 26, 2021), https://www.inman.com/2021/01/26/broker-warns-mlss-help-us-compete-against-zillow-or-lose-us/.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 27
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
**1111 THIRD AVENUE, SUITE 3000**
**SEATTLE, WASHINGTON  98101-3292**
**PHONE (206) 447-4400**

100.    The NAR issues guidelines for the MLSs to follow, including rules regarding the clear segregation of MLS listings—sourced from MLS internet data exchange (IDX)—from non-MLS listings.

101.    The IDX data feed originated in the early 2000s, when real estate agents and brokers realized they could promote their listings online.  The IDX feed allows agents who are members of the MLS to have online access to MLS listings and to make these listings publicly visible on their websites.

102.    The NAR and MLSs have established policies and rules on how the IDX can be used.  The NAR's Handbook on Multiple Listing Policy includes policies applicable to MLS participants' IDX websites and displays.  The NAR's policies control the web displays of MLS members—referred to as "participants"—receiving the IDX feed.  The segregation rule appears in NAR's IDX optional model rules, providing:

> Listings obtained through IDX feeds from Realtor® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources. Listings obtained from other sources (e.g., from other MLSs, from non-participating brokers, etc.) must display the source from which each such listing was obtained.[11]

This rule also appears in other NAR model rules—it is not limited to an "MLS Operated as a Committee of an Association of Realtors."  Under this rule, MLS member brokers must display listings received from fellow MLS brokers through the IDX feeds separately from listings received from non-MLS brokers.

103.    These rules are promulgated through co-conspirator MLSs.  For instance, the Bright MLS is one of the largest in the nation, covering portions of six states plus the District of Columbia, twenty million consumers, and has over 95,000 subscribers.  Bright's Rule 16.3(h)(iii) enforces the segregation policy:

---

[11] National Association of Realtors, *Handbook on Multiple Listing Policy*, *Model Rules and Regulations for an MLS Operated as a Committee of an Association of REALTORS*, Rule 18.3.11.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 28
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

Non-MLS Listings. IDX Participants and Subscribers are not permitted to display or frame non-MLS listed properties [Non-MLS Listings] on any page or window of their web site that displays the listings of other Participants obtained from Bright MLS's IDX Database. Such Non-MLS Listings may be displayed on a separate page or window of the IDX Participant's web site.

REX does business in several markets where the Bright MLS operates and implements this rule. Similar rules are advanced by other MLSs across the country.

104.    Zillow's website redesign, which demotes non-MLS listings, is driven by its voluntary membership in the NAR and MLSs and the agreed adherence to their rules.

105.    Zillow acknowledged in communications with REX that the segregation between MLS and non-MLS properties was not an improvement in Zillow's web display.  As one Zillow sales representative explained, "[T]his isn't a fix, but more a result of us joining the MLS and changing over to IDX feeds."  In another correspondence, a Zillow vice president commented: "In general these changes are for us to comply with MLS rules."

106.     Beginning in January 2021, Zillow applied the clear-segregation rule to separate MLS and non-MLS listings.

107.    The changes to Zillow and Trulia's sites perfect the NAR/MLS cartel's control over the digital hubs of the real estate economy to the detriment of consumers.  With Zillow's decision to conceal non-MLS listings under the misleading and inferior "other" category, listings from non-MLS brokers such as REX will be far less competitive.  Through horizontal agreements, three of the most highly visited hubs—Zillow, NAR-licensed Realtor.com, and Trulia—now provide virtually no visibility to homes listed by brokers outside the market dominant cartel.  The recent changes will only prolong the commission-driven, anticompetitive practices of the incumbent MLS brokers and stifle investment in innovative, pro-consumer alternatives such as REX.  Moreover, if these changes stand and non-MLS listings remain hidden on the dominant portal site, no competitive broker will emerge offering an alternative to the MLS regime for the foreseeable future.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 29
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

**H.    The Change In Zillow's Display Is Deceptive And An Illegal Restraint Of Trade**

108.    The NAR and MLSs are trade associations made up of competitors in the market for residential real estate brokerage services.  They constitute a sizeable majority of active real estate licensees.

109.    According to NAR CEO Goldberg, the "core purpose" of the organization is "to help our members become more profitable and successful."  NAR functions as a "collective force, influencing and shaping the real estate industry."  As NAR's CEO acknowledged, direct-to-consumer technology platforms challenge the ability of NAR members to increase their profitability.  The way "to move the industry forward in our best interest," the NAR CEO explained, was to "identify potential alliances with external sources seeking to infiltrate" the real estate market.  By "embracing" the competition, Goldberg noted, NAR could bring disruptors under the organization's tent and leverage them in defense of the NAR's core mission of maintaining the profitability of its members.[12]

110.    The rules promulgated, followed, and enforced by NAR and MLS members, including the IDX segregation rules requiring member listings to be displayed separately from non-member listings, constitute horizontal agreements between NAR members that serve their material interests.  Courts have repeatedly recognized that NAR and MLS rules are horizontal agreements between competitors.

111.    Zillow now has begun providing residential real estate brokerage services.

112.    As discussed above, Zillow also owns and controls two of the most trafficked consumer-facing residential real estate aggregator websites.  As shown by numerous studies and

---

[12]   NAR CEO Keynote from the NAR Leadership Summit (Aug. 15, 2017), *available at* https://www.youtube.com/watch?v=NfShMRQlx3o.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 30
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
**1111 THIRD AVENUE, SUITE 3000**
**SEATTLE, WASHINGTON  98101-3292**
**PHONE (206) 447-4400**

NAR's own research, visibility for listings on residential real estate aggregator websites is now necessary to effectively compete in the market for residential real estate brokerage services.

113.    Zillow represented an "external source" that has been "embraced" by the dominant broker cartel and brought within the NAR's tent.  The aggregator site is now a tool to limit innovative disruption and thereby maintain the high broker commissions that NAR/MLS rules require.  Once "independent of any real estate industry group," Zillow is now structured to protect the profitability of MLS brokers—the "core purpose" of the NAR.

114.    When Zillow joined the NAR and MLSs, it agreed to abide by their rules, including the IDX segregation rules.  As a result, Zillow now segregates all non-MLS member listings from MLS listings, disadvantaging all non-MLS listings, including REX's.

115.    To do so, Zillow now categorizes MLS listings as "Agent Listings" and all non-MLS listings as "Other Listings."  Categorizing REX's listings in the "Other listings" category is misleading, deceptive, and anticompetitive because homes sold by REX on Zillow are listed by licensed agents. Further, by defaulting the website to display "Agent Listings" first, Zillow conceals REX-listed homes by requiring consumers to take extra steps to view them.  This new Zillow-implemented categorization and display misleads and deceives consumers in contravention of state and federal law.

116.    Because Zillow's display change has been made nationwide, it affects REX in every market in which it operates and every market within the United States where REX may want to operate.  Consumers and any current or would-be non-NAR, non-MLS competitors are also affected nationwide.

117.    REX has suffered significant declines in its listing views and showings because of the change in display implemented by Zillow, which has in turn injured REX.  REX has spent money to mitigate the damage, REX has lost customers, and REX continues to suffer injury to its reputation, because of the change in Zillow's display.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 31
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

118.    The new web display degrades Zillow's site without any material pro-consumer, competitive benefit.  The concealment of non-MLS listings from Zillow and Trulia's sites are a group boycott perpetuated by NAR and MLS members against non-member competitors. Zillow's agreement to comply with rules that segregate MLS listings on their websites, and in turn demote competitive non-MLS listings, violates federal and state antitrust law.  The recent changes are an illegal, exclusionary act.  Defendants must be enjoined from enforcing the clear-segregation rule to protect the digital real estate economy from this unreasonable restraint on trade.

## V.    THE RELEVANT MARKETS AND DEFENDANTS' MARKET POWER

119.    NAR, through its members, and MLS members compete with REX in the market for the provision of real estate brokerage services to sellers and buyers of residential real estate in local markets throughout the country where REX operates.  Market participants compete to attract buyers and/or sellers to facilitate residential real estate transactions in return for fees, often in the form of percentage-based commissions.  Market participants must maintain licenses to provide residential real estate brokerage services.

120.    NAR members constitute a predominate share, more than 70 percent, of market participants (active licensees) per NAR.

121.    "By virtue of near industry-wide participation and control over important data, brokers offering MLSs possess and exercise market power [over] real estate brokerage services to home buyers and sellers in local markets throughout the country."[13]

122.    Online display through aggregator sites has become a crucial channel for market participants to attract buyers and/or sellers and to consummate residential real estate transactions.

---

[13] Complaint at 11, *United States v. National Association of REALTORS®*, Case No. l:20-cv-3356 (D.D.C. Nov. 19, 2020); *see also Memorandum Opinion and Order, Moehrl v. NAR*, Case No. l:19-cv-01610, 2020 U.S. Dist. LEXIS 182532, at *5 (N.D. 111. Oct. 2, 2020) (discussing the current market dominance of MLSs); *Sitzer*, 420 F. Supp. 3d at 914 (same).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 32
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

Zillow and Trulia have become synonymous with internet residential real estate search. The first- and fourth-most-trafficked aggregator sites, respectively, Zillow and Trulia attract billions of views per year and hundreds of millions of unique monthly site visitors. More than half of homebuyers locate their home on the internet.

123. The NAR, MLSs, and Zillow have implemented their rules and agreement to exclude and impair non-MLS, non-NAR member competitors' access to online display in local markets nationwide. REX is impacted in all markets where it operates within the nineteen states in which it holds brokerage licenses. REX will be further impacted by Defendants' conduct because it restricts growth opportunities in all other markets nationwide where REX may want to expand and serve.

## VI.   ANTICOMPETITIVE CONDUCT

124. The NAR and its licensee members, MLSs and their licensee members, and Zillow, which has memberships in both, have voluntarily joined together in these membership organizations made up of competitors in the residential real estate services market, agreed to abide by their rules, including the IDX segregation rule, and have thereby agreed and conspired to restrain competition by non-members.

125. In particular, they are using their commonly agreed IDX segregation rule to implement a change in Zillow.com's and Trulia.com's display of home inventory to demote and obscure listings by non-member competitors.

126. It is a group boycott of non-members, denying them effective access to internet residential real estate aggregator sites, which are a critically important input to effectively compete in the provision of residential real estate brokerage services.

## VII.   ANTICOMPETITIVE EFFECTS

127. The group boycott affecting Zillow's display is implemented nationwide and affects REX in each local market in which it is active.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 33
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

128.    REX is experiencing dramatic declines in consumer views of its listings on Zillow sites, which has also led to decreased showing activity.  Because of decreased activity on its listings, REX clients have questioned REX's effectiveness, have questioned why they cannot find their property on Zillow, have requested that REX co-list properties with MLS members to increase its online profile, and have cancelled their listing agreements with REX.  REX is also losing additional customers due to the related reputational impact of dissatisfied clients and the inability of potential new clients to see REX listings and inquire about representation.

129.    REX's innovative model is suffering, and its customer growth and expansion into new markets is threatened.

130.    The change in Zillow's site display provides no tangible competitive or pro-consumer benefit.  Yet consumers will be deceived by Zillow's new, misleading labels and will be harmed by the lessened competition in the marketplace.

## VIII.   CLAIMS

### COUNT I - UNREASONABLE RESTRAINT ON TRADE IN VIOLATION OF SECTION I OF THE SHERMAN ACT, 15 U.S.C. § 1

131.    Paragraphs 1-130 are fully incorporated herein.

132.    Section 1 of the Sherman Act states "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal," 15 U.S.C. § 1, with standing for private actions granted by Section 4 of the Clayton Act, 15 U.S.C. § 15.

133.    Plaintiff REX competes with Defendant Zillow, member of Defendant NAR, members of NAR, and non-party MLS members in the market for the provision of real estate brokerage services to sellers and buyers of residential real estate in local markets throughout the country where REX operates.  Defendant Zillow also maintains prominent residential real estate aggregator websites that are critical to effective competition in the market.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 34
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

134. Alternatively, Plaintiff REX competes with Defendant NAR, members of NAR, and members of non-party MLSs in the market for the provision of real estate brokerage services to sellers and buyers of residential real estate in local markets throughout the country where REX operates, while Defendant Zillow maintains frequently visited, or dominant, residential real estate aggregator websites that are critical to effective competition in the local markets where REX competes.

135. Defendants NAR and Zillow, with non-party MLSs, entered into a horizontal combination, agreement, and/or conspiracy to boycott and deprive non-MLS, non-NAR members, including REX, effective access to prominent Zillow residential real estate aggregator websites, which restrains trade among competitors.

136. The change to Zillow's site display, made pursuant to the NAR clear-segregation rule, is not justified by any procompetitive benefit. As such, this conduct constitutes a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, without necessity of further proof, or alternately, under a Rule of Reason analysis.

137. Defendant NAR and non-party MLSs have combined to exercise significant market power in each local market where REX competes.

138. The combination, agreement, and/or conspiracy to restrain trade between Defendants and MLSs has been implemented nationwide, affecting consumers and competitors in every residential real estate services market and thereby interstate commerce.

139. REX's ability to effectively compete and offer innovative and lower-priced residential real estate brokerage services to consumers, along with every other similarly situated competitor, has been constrained by the anticompetitive combination, agreement, or conspiracy to boycott and foreclose equal access to Zillow's prominent residential real estate aggregator sites.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 35
Case No.: 2:21-cv-00312-TSZ

140.    Because of Defendants' anticompetitive group boycott, REX's ability to attract and retain clients is directly impacted because REX listings are hidden and obscured on the first- and fourth-most-trafficked aggregator websites, Zillow.com and Trulia.com.   The anticompetitive actions are degrading REX's reputation, decreasing the amount of buyer activity on REX's listings, and therefore decreasing REX's ability to consummate transactions. Accordingly, REX has lost clients, has been forced to co-list clients with MLS members, and has been repeatedly questioned about the lack of visibility of REX listings on Zillow's websites.

141.    REX's business has been injured by Defendants' anticompetitive actions in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and REX is currently suffering and will continue to suffer irreparable harm if Defendants are not enjoined from their continuing violations.

**COUNT II – FALSE ADVERTISING IN VIOLATION OF SECTION 1125 OF THE LANHAM ACT, 15 U.S.C. § 1125 (AGAINST ZILLOW)**

142.    Paragraphs 1-141 are fully incorporated herein.

143.    Defendant Zillow operates commercial websites that aggregate residential real estate listings in all fifty states. Defendant Zillow's websites operate as a platform for commercial advertising of residential real estate listings.  Zillow allows consumers throughout the United States to view homes for sale that meet the criteria specified by the consumer.

144.    Plaintiff REX is a licensed real estate broker in every state where it operates and employs licensed agents to sell homes. REX is not a member of any MLS or the NAR.

145.    Defendant Zillow's websites contain false and misleading statements that misrepresent the nature, characteristics, qualities and origin of its real estate listings, in violation of 15 U.S.C. § 1125(a).  Namely, Zillow labels as "Agent listings" only homes that are listed by members of the NAR or MLS.  Zillow labels homes listed by REX agents as "Other listings."

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 36
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

146. Defendant Zillow adjusted the default display for the Zillow websites to show only homes labeled "Agent Listings" when consumers search for homes. Consumers who wish to view homes listed by REX agents must select the "Other Listings" tab.

147. Labeling the real estate listings on Zillow's websites in the manner described above actually deceives and/or has the tendency to deceive a substantial segment of consumers using Zillow into believing that homes listed by REX agents are not agent listings.

148. Defaulting the display on Zillow's website to only show the real estate listings labeled "Agent listings" in the manner described above actually deceives and/or has the tendency to deceive a substantial segment of consumers using Zillow into believing that they have viewed all homes listed by licensed real estate agents when the consumer conducts a search.

149. Defendants Zillow and NAR knowingly adopted this labeling system for all nation-wide listings on Zillow as part of a common plan or scheme to confuse, mislead, and deceive consumers regarding the affiliation, connection, or association of the homes listed on Zillow's websites.

150. Defendants were aware of and knew that REX was a licensed real estate broker and employs licensed agents. To wit, REX pays Zillow under Zillow's Premier Agent program, and Zillow classifies numerous REX agents as "premier agents" as part of this program. Nonetheless, Zillow does not label homes listed by any REX agent as an "Agent Listing."

151. The acts of Defendants described above were and are deliberately calculated to confuse and/or deceive the public, and said acts constitute willful and deliberate violations of 15 U.S.C. § 1125(a).

152. Plaintiff REX has suffered injury as a result of Defendants' false, misleading, and deceptive labeling system either by direct diversion of sales from REX to MLS- and NAR-affiliated realtors or by a lessening of the goodwill associated with REX, in violation of 15 U.S.C. § 1125(a).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 37
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

**COUNT III – FALSE ADVERTISING IN VIOLATION OF SECTION 1125 OF THE LANHAM ACT, 15 U.S.C. § 1125 (AGAINST NAR)**

153.    Paragraphs 1-152 are fully incorporated herein.

154.    On information and belief, NAR, through its MLS members and agents, approved of Zillow's decision to display REX listings as "Other Listings" rather than "Agent Listings."

155.    NAR, through some of its MLS members and agents, reviewed Zillow's display for compliance with NAR rules before Zillow actually changed its display to show REX listings as "Other Listings".

156.    Zillow acted as NAR's agent in moving REX listings to "Other Listings" to enforce NAR's rules, including its co-mingling and segregation rules.

157.    The description of REX-listed homes as "Other Listings" is false.

158.    REX-listed homes are listed by licensed agents.

159.    Zillow's description of REX listings as "Other Listings" has the purpose and effect of increasing traffic to and helping bolster listings of Zillow agents and other NAR agents.

160.    The benefits of Zillow's deceptive conduct to NAR members are also benefits to NAR as an organization of and for these members.

161.    NAR is responsible for the wrongful conduct of its agents exercising authority granted by NAR and for the benefit of the trade association and its members.

162.    Plaintiff REX suffered injury as a result of Defendants' false, misleading, and deceptive labeling system either by direct diversion of sales from REX to MLS- and NAR-affiliated realtors or by a lessening of the goodwill associated with REX, in violation of 15 U.S.C. § 1125(a).

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 38
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

**COUNT IV – UNFAIR OR DECEPTIVE ACT OR PRACTICE VIOLATING RCW 19.86.020 OF THE WASHINGTON CONSUMER PROTECTION ACT (AGAINST ZILLOW)**

163.    Paragraphs 1-162 are fully incorporated herein.

164.    The Washington Consumer Protection Act makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

165.    A private action to remedy an unfair or deceptive act or practice may establish injury to the public when it (1) injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.  RCW 19.86.093.

166.    After Zillow became a member of MLS organizations in 2020, it agreed to comply with the requirements of these organizations requiring segregation in search results presented to consumers between listings from brokers who are not members of an MLS, including REX.

167.    Prior to 2021, Zillow search results included homes in the geographic area specified by a consumer, including those provided to Zillow by an MLS-aligned broker or by a REX broker.

168.    But in January 2021, Zillow changed its display so that the first page of results is presented under a deceptive and misleading heading "Agent listings," while hiding REX listings behind a tab labeled "other listings."  Unless the consumer clicks on the tab, he or she will be unaware of the REX listings entirely.

169.    REX agents are licensed real estate brokers by the states in which they operate, including Washington State.

170.    Zillow's new search listings practice has the capacity to deceive consumers because it does not include all "agent listings" under that heading in the first page of the search results.  By including listings by REX agents on an obscured page under the heading "other

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 39
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

listings," Zillow has the capacity to deceive consumers into the false belief that REX listings are not by licensed real estate agents.

171.    Consumers and even real estate professionals have been deceived by Zillow's new search listings practice.  For example, some homeowners who listed their property with a REX agent have received phone calls from other real estate agents offering to list their homes under the assumption the homeowner was not represented.

172.    Zillow's deceptive search listing practice has injured REX, whose agent-employees have lost real estate listings from homeowners who complained that they could no longer find their home on Zillow.

173.    Zillow's deceptive search listing practice had and has the capacity to injure other persons as its website is by far the most visited by consumers looking to buy or sell a home.

a.    According to Zillow's 2020 10-K report to the Securities and Exchange Commission, its "data and content has helped the Zillow brand become synonymous with real estate.  Today, more people now search for 'Zillow' than 'real estate,' . . . and Zillow is the most visited brand in the industry."

b.    According to Zillow's 2020 10-K report, the Zillow Group attracted an "annual high of 245 million unique users in July 2020 and more than 9.6 billion visits in 2020".

174.    By falsely indicating that "agent listings" do not include those by REX licensed real estate agents, Zillow's new search listing practice has the capacity to deceive its more than 240 million annual unique users—in Washington and other states—into believing that they have seen all agent listed homes on a search results page that does not include all such results.

175.    Zillow's new search listing practice also has the capacity to deceive its more than 240 million annual unique users by concealing from them the opportunity to list or buy a home from a licensed real estate agent who may charge significantly lower commissions than a traditional broker.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 40
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

176.    Zillow's deceptive practices impact consumers searching for homes to buy as well as businesses that compete with Zillow.

177.    REX and its licensed real estate agents have been injured by Zillow's deceptive search listing practice and have suffered damages in an amount to be proven at trial.

178.    REX and members of the public are currently suffering and will continue to suffer irreparable harm if Defendants are not enjoined from their continuing violations.

**COUNT V – UNFAIR OR DECEPTIVE ACT OR PRACTICE VIOLATING RCW 19.86.020 OF THE WASHINGTON CONSUMER PROTECTION ACT (AGAINST NAR)**

179.    Paragraphs 1-178 are fully incorporated herein.

180.    REX homes are listed by licensed agents.

181.    Zillow's change to describe REX-listed homes as "Other Listings" was done to comply with NAR's co-mingling and segregation rules.

182.    NAR, through its MLS members and agents, was aware of the change to Zillow's description of REX-listed homes before and after Zillow made the change.

183.    NAR, through its MLS members and agents, approved of the change to Zillow's description of REX-listed homes.

184.    Zillow acted as a NAR member and NAR agent to implement NAR's co-mingling and segregation rules in changing the description of REX-listed homes.

185.    The new description of REX listings has the capacity to deceive the public to believe that REX listings are not listed by licensed agents.

186.    The new description of REX listings has the capacity to decrease the number of views to REX listings put in the "Other Listings" tab.

187.    The new description of REX listings has the capacity to decrease the number of sellers willing to use REX's services and agents.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 41
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

188.    The potential decrease will hurt consumers and the public as a whole by decreasing competition and having more sellers use higher-commissioned NAR agents increasing the transaction cost for all home sales subject to those higher commissions.

**COUNT VI – CONSPIRACY TO RESTRAIN TRADE VIOLATING RCW 19.86.030 OF THE WASHINGTON CONSUMER PROTECTION ACT**

189.    Paragraphs 1-188 are fully incorporated herein.

190.    The Washington Consumer Protection Act makes unlawful "[e]very contract, combination, or conspiracy in restraint of trade or commerce."  RCW 19.86.030.

191.    Zillow has agreed to restrain competition in the market for residential real estate brokerage in the United States by abandoning its long-standing independence and openness and adopting the anticompetitive rules and practices of residential real estate brokerage organizations.

192.    Until 2020, Zillow operated its business, including its residential real estate search portal, by serving consumers, brokers, and other elements of the residential real estate market without agreeing to rules imposed by real estate broker associations, including MLSs.

193.    In 2020, Zillow renounced its independence from real estate broker associations rules and announced that it would begin complying with model rules promulgated by NAR and adopted by many MLSs.

194.    MLSs pool residential real estate listings obtained by competing brokers and make this information available to all brokers. The NAR has issued "model" rules for local multiple listing services, including rules for "internet distribution" of the pooled listings, so-called "IDX" rules.

195.    Many, but not all multiple listing service organizations, have adopted NAR's "optional" IDX rule, which prohibits the co-mingling in residential real estate search results of listings from MLS-affiliated agents and other listings.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 42
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400

196. According to Zillow's annual 2020 10-K report, some of its subsidiaries have joined MLS organizations, and each MLS has "adopted its own rules" about "how listings data must be displayed on our websites and mobile applications."

197. Zillow executives have said the company's decision to hide REX agent listings on Zillow's search portal was a result of its agreement to comply with these multiple listing service organization rules. REX has employee-agents in twenty states and jurisdictions, and their listings in Washington and other states have been harmed by Zillow's decision to hide them on a second page of search results.

198. Zillow's decision to agree to follow the anticompetitive clear-segregation rules promoted by the NAR and adopted by some MLSs limits the exposure of listings by REX's brokers, whose low commissions create competition on traditional brokers to in turn lower their commissions.

199. Zillow's agreement to follow the anticompetitive MLS co-mingling rules harms competition and consumers. It limits the ability of new entrants with lower commission business models to attract and retain listings. Consumers are denied information about lower cost alternatives to traditional listing brokers.

200. REX has been injured by Zillow's participation in the anticompetitive co-mingling rules. After Zillow's agreement to follow the anticompetitive MLS co-mingling rules, several REX clients pulled their listings from the company's agents, expressing a concern that potential buyers could no longer find their homes on Zillow's search portal.

201. REX and members of the public are currently suffering and will continue to suffer irreparable harm if Defendants are not enjoined from their continuing violations.

**COUNT VII – DEFAMATION**

202. Paragraphs 1-201 are fully incorporated herein.

203. Zillow's statement that REX homes are not listed by an agent is false.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 43
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

204. Zillow's statement that REX homes are "Other Listings" is false.

205. NAR, through its MLS members and agents, had knowledge of, and approved of, Zillow's statement that REX homes are not listed by an agent.

206. NAR, through its MLS members and agents, had knowledge of, and approved of, Zillow's statement that REX homes are "Other Listings."

207. Zillow acted as NAR's agent when it stated that REX homes are not listed by an agent and that REX homes are "Other Listings."

208. REX-listed homes are listed by its licensed agent/employees.

209. Zillow knows that REX-listed homes are listed by licensed agents.

210. NAR knows that REX listed homes are listed by licensed agents.

211. REX agents are Premier Agents on Zillow's websites.

212. Zillow's statements are made in commerce.

213. Zillow's statements are not privileged

214. The description of REX-listed homes as "Other Listings" instead of "Agent Listings" harms REX's reputation.

215. The description of REX-listed homes as "Other Listings" harms REX by lowering the number of views of REX-listed homes and dissuades consumers from listing with REX.

216. The description of REX-listed homes as "Other Listings" harms REX by decreasing its revenues.

## IX.    PRAYER FOR RELIEF

Accordingly, Plaintiff REX requests that the Court:

A. Adjudge and decree that Defendants have committed violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

B. Adjudge and decree that Defendants have committed violations of Section 1125 of the Lanham Act, 15 U.S.C. § 1125.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 44
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

C. Adjudge and decree that Defendants have committed violations of each of the state laws enumerated in Counts IV, V, VI, and VII and entitled relief provided for thereunder including damages, treble damages, preliminary and permanent injunctive relief, attorneys' fees, and costs pursuant to RCW 19.86.090 and Washington law.

D. Award REX statutory damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

E. Award REX statutory damages and costs of this action pursuant to 15 U.S.C. § 1117.

F. Award REX damages and statutory damages to be proven at trial.

G. Award REX treble damages.

H. Award REX attorneys' fees and costs.

I. Award REX prejudgment interest.

J. Issue a preliminary and permanent injunction, pursuant to federal and state law including Section 16 of the Clayton Act, 15 U.S.C. § 26, and RCW 19.86.090, that enjoins and restrains:

   a. Zillow, NAR, and their officers, directors, partners, agents, affiliates, members, and employees, and all persons acting or claiming to act on their behalf or in concert with them, from continuing to engage in any anticompetitive conduct and from adopting in the future any practice, plan, program or device having a similar purpose or effect to the anticompetitive actions set forth above.

   b. Zillow, NAR, and their officers, directors, partners, agents, affiliates, members, and employees, and all persons acting or claiming to act on their behalf or in concert with them, from enforcing, implementing, or operating under any agreement, conspiracy, combination, or membership rule requiring

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 45
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

segregation of REX's residential real estate listings from listings of NAR members and/or MLS members on any website controlled by Zillow.

c. Zillow, NAR, and their officers, directors, partners, agents, affiliates, members, and employees, and all persons acting or claiming to act on their behalf or in concert with them, from enforcing, implementing, or operating under any agreement, conspiracy, combination, or membership rule requiring Zillow to in any way indicate that REX's residential real estate listings are not represented by a licensed agent or broker on any website controlled by Zillow.

d. Zillow and its officers, directors, partners, agents, affiliates, members, and employees, and all persons acting or claiming to act on their behalf or in concert with them, from excluding REX's residential real estate listings from the category of "Agent listings" on all websites controlled by Zillow.

e. Zillow and its officers, directors, partners, agents, affiliates, members, and employees, and all persons acting or claiming to act on their behalf or in concert with them, from categorizing REX's residential real estate listings as "Other listings" on all websites controlled by Zillow.

f. Order and award all other relief to REX as the Court deems just and proper.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), the Plaintiff demands a trial by jury of all issues properly triable to a jury in this case.

(*Signatures on following page*)

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 46
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

RESPECTFULLY SUBMITTED this 30th day of September, 2021.

/s/ Michael Vaska
Michael Vaska, WSBA #15438
/s/ Rylan Weythman
Rylan Weythman, WSBA #45352
FOSTER GARVEY PC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101
Telephone:  (206) 447-4400
Facsimile:  (206) 447-9700
Email:  michael.vaska@foster.com
          rylan.weythman@foster.com

/s/ Darren L. McCarty
Darren L. McCarty, *Pro Hac Pending*
/s/ Cristina M. Moreno
Cristina M. Moreno, *Pro Hac Pending*
McCARTY LAW PLLC
1410B West 51st Street
Austin, TX 78756
Telephone:  (512) 827-2902
Email:  darren@mccartylawpllc.com
          cristina@mccartylawpllc.com

*Attorneys for Plaintiff REX – Real Estate Exchange, Inc.*

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 47
Case No.: 2:21-cv-00312-TSZ

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400

## CERTIFICATE OF SERVICE

I certify that on September 30, 2021, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 30th day of September, 2021.

*s/ Matteus Vaga*
Matteus Vaga, Legal Practice Assistant

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR DAMAGES - 48
Case No.: 2:21-cv-00312-TSZ

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400