THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REX – REAL ESTATE EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW, INC., et al. <br><br> Defendants. | Case No. 2:21-cv-00312-TSZ <br><br> **THE NATIONAL ASSOCIATION OF REALTORS'® MOTION TO DISMISS REX'S AMENDED COMPLAINT** <br><br> NOTE ON MOTION CALENDAR: November 5, 2021 <br><br> ORAL ARGUMENT REQUESTED |

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................................1

II.   ARGUMENT .........................................................................................................................2

    A.   The Amended Complaint Confirms That All of REX's Claims Against NAR Fail Because NAR Did Not Cause REX's Alleged Injuries (Counts I, III, V, VI, and VII) ..........................................................................................2

    B.   REX's False Advertising-Related Claims Against NAR (Counts III and V) Again Fall Well Short of the Heightened Pleading Requirements of Rule 9(b) ..................................................................................................................5

    C.   REX Has Failed to State a Defamation Claim Against NAR (Count VII) ...............7

    D.   REX's New Allegations Show REX Does Not Have Antitrust Standing (Counts I and VI) ....................................................................................................8

        1.   REX Has Failed to Plead an Antitrust Injury Caused By NAR's "Commingling and Segregation Rules" ..........................................................8

        2.   REX Has No Antitrust Standing to Challenge the "Mandatory Offer of Compensation Rule" ..................................................................................9

        3.   REX's "Demotion" Theory Is Insufficient as a Matter of Law to Establish Antitrust Standing ..................................................................10

CONCLUSION ..........................................................................................................................12

NAR's Motion to Dismiss Am. Compl.
Case No. 2:21-cv-00312-TSZ       i

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
  2014 WL 5365514 (W.D. Wash. Oct. 21, 2014) .................................................................. 5

*Alaska v. Suburban Propane Gas Corp.*,
  123 F.3d 1317 (9th Cir. 1997) ............................................................................................. 5

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*,
  190 F.3d 1051 (9th Cir. 1999) ........................................................................................... 10

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982) ............................................................................................................ 8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ............................................................................................................ 8

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ....................................................................................................... 9, 10

*Bastida v. Nat'l Holdings Corp.*,
  2016 WL 4250135 (W.D. Wash. Aug. 4, 2016) .................................................................. 3

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) .......................................................................................................... 10

*California ex rel. Heryford v. Citigroup Inc.*,
  2018 WL 3197905 (E.D. Cal. June 26, 2018) ..................................................................... 6

*Churyumov v. Amazon Corp. LLC*,
  2019 WL 6271728 (W.D. Wash. Nov. 25, 2019) ................................................................ 7

*Columbia Broad. Sys., Inc. v. Am. Soc. of Composers, Authors & Publishers*,
  620 F.2d 930 (2d Cir. 1980) ................................................................................................ 4

*Consortium of Servs. Innovation v. Microsoft Corp.*,
  2020 WL 885742 (W.D. Wash. Feb. 24, 2020) ................................................................... 6

*Duc Tan v. Le*,
  300 P.3d 356 (Wash. 2013) ................................................................................................. 7

*eMag Sols., LLC v. Toda Kogyo Corp.*,
  426 F. Supp. 2d 1050 (N.D. Cal. 2006) ............................................................................... 4

*Env't Transportation of Nevada, LLC v. Mod. Mach. Co. Inc.*,
  2020 WL 1847747 (W.D. Wash. Apr. 13, 2020) ................................................................ 3

*Fidelity Mortg. Corp. v. Seattle Times Co.*,
  213 F.R.D. 573 (W.D. Wash. 2003) .................................................................................... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................................................ 3

*LiveUniverse, Inc. v. MySpace, Inc.*,
  304 F. App'x 554 (9th Cir. 2008) ...................................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................................ 9

*McVeigh v. Climate Changers, Inc.*,
  2016 WL 4268939 (W.D. Wash. Aug. 15, 2016) ................................................................ 7

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                    ii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................................................. 6

*Phillips v. World Pub. Co.*,
  822 F. Supp. 2d 1114 (W.D. Wash. 2011) ......................................................................... 7

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) .......................................................................................... 10

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................................................ 10

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
  870 F.2d 397 (7th Cir. 1989) .............................................................................................. 9

*Schmalenberg v. Tacoma News, Inc.*,
  87 Wash. App. 579 (1997) .................................................................................................. 3

*Steele v. Extendicare Health Servs., Inc.*,
  607 F. Supp. 2d 1226 (W.D. Wash. 2009) ......................................................................... 3

*Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*,
  2007 WL 2318903 (N.D. Cal. Aug. 13, 2007) ................................................................... 5

*USAirways Grp., Inc. v. Brit. Airways PLC*,
  989 F. Supp. 482 (S.D.N.Y. 1997) ..................................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 6

*W. Goebel Porzellanfabrik v. Action Indus., Inc.*,
  589 F. Supp. 763 (S.D.N.Y. 1984) ..................................................................................... 5

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 1

Federal Rule of Civil Procedure 9(b) ........................................................................................... 5

**Statutory Authorities**

15 U.S.C. § 15 ............................................................................................................................. 10

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ        iii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

# I. INTRODUCTION

Defendant National Association of REALTORS® respectfully moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss REX's Amended Complaint (ECF 99) because REX has failed to allege facts that plausibly show its alleged injuries were caused by NAR.

In its amended allegations, REX now acknowledges many NAR MLSs did *not* require Zillow to make changes to its website, which means NAR's rules—which, according to the Amended Complaint, apply equally to all NAR-affiliated MLSs—did not require MLSs to prohibit commingling, and, by extension, did not require Zillow to make changes to its website. To address this fundamental problem in its Amended Complaint, REX advances new, conclusory allegations to suggest Zillow acted as NAR's agent when it redesigned the Zillow website and that only "some" unidentified MLSs purportedly acted as NAR's agents when they allegedly reviewed and approved Zillow's new website design. Those vague assertions, however, fall well short of establishing a plausible agency relationship between NAR and Zillow—or NAR and any MLS—with respect to the design of Zillow's website. REX's amended allegations therefore show that REX's claimed injuries were not caused by NAR.

The absence of a causal relationship between NAR's actions and REX's claimed injuries, as has been clarified by REX's amended allegations, disposes of all of REX's claims against NAR. REX has failed to state a claim against NAR under the Lanham Act (Count III) and Washington Consumer Protection Act, RCW 19.86.020, (Count V) because REX still has not addressed the deficiencies the Court identified in REX's original Complaint. *See* ECF 98 at 20-24.[1] Specifically, REX has not alleged facts showing "what NAR did to design or encourage th[e] particular labeling system on Zillow's websites, let alone when, where, and how NAR did it." *Id.* at 22. REX's new state law defamation claim (Count VII) fails because REX has not plausibly alleged that NAR made

---

[1] Contrary to the admonition that "[t]he Court discourages any future use of the term 'cartel' to describe Defendants' conduct, which is neither persuasive nor remotely accurate," ECF 80 at 11 n.7, REX uses that exact word 11 times in its Amended Complaint. *See* ECF 99 ¶¶ 46, 47, 55, 60 (twice), 62, 93, 96, 107 (twice), 113. This underscores that REX did not amend its original Complaint to address all of the problems the Court previously identified in its case.

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ — 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

or directed any false statement. And REX's new allegations undercut its antitrust claims against NAR (Counts I and VI) as well. While the Court previously denied NAR's motion to dismiss REX's antitrust claims, the new facts alleged in REX's Amended Complaint confirm that NAR's actions did not *cause* any of REX's alleged antitrust injuries, which means that REX has not alleged causal antitrust injury and thus does not have antitrust standing to assert its claims against NAR.

In light of these deficiencies, NAR respectfully asks the Court to dismiss all of REX's claims against NAR, and in the case of REX's false advertising claims against NAR, to dismiss them with prejudice (because REX already had a chance to amend).

## II.    ARGUMENT

**A.    The Amended Complaint Confirms That All of REX's Claims Against NAR Fail Because NAR Did Not Cause REX's Alleged Injuries (Counts I, III, V, VI, and VII)**

The Amended Complaint fails to allege *facts* that plausibly suggest NAR's actions caused REX's alleged injuries by, for example, designing or encouraging the labeling system on Zillow's websites. Instead, REX resorts to (1) naked, unsupported allegations advanced "on information and belief," ECF 99 ¶¶ 80, 87, 154; (2) conclusory, unsupported allegations that NAR reviewed and approved of Zillow's decisions "through its MLS members and agents," *id.* ¶¶ 154, 182, 183, 205, 206; and (3) conclusory, unsupported allegations that somehow "Zillow acted as NAR's agent" for the purpose of enforcing the NAR rules against Zillow, *id.* ¶¶ 156, 207.

None of these allegations show that NAR—which is independent of the MLSs and Zillow—took any action to design or change Zillow's website. In fact, REX's Amended Complaint avoids specific factual allegations against NAR, only stating that "*[s]ome NAR MLSs* reviewed Zillow's proposed new display to ensure compliance with NAR rules before Zillow implemented the change," "*[s]ome NAR MLSs* approved of Zillow's new display," and "*[s]ome NAR MLSs* required Zillow to make changes to its display products, including moving of REX listings to 'Other Listings.'" *Id.* ¶¶ 83-85 (emphasis added). These new allegations are important. Since NAR's rules apply equally to all MLSs affiliated with NAR, REX's allegations that only "some" of those MLSs took steps to prohibit commingling, while other MLSs did not, demonstrate that the actions taken by those unidentified MLSs were not encouraged, required, or carried out on behalf of NAR.

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                    2

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

Otherwise stated, the Amended Complaint shows that "some NAR MLSs" did *not* require Zillow to make changes to its display, and thus NAR's rules (which every NAR-associated MLS must follow, *see id.* ¶ 86) did *not* require Zillow to make changes to its website merely because it joined NAR-associated MLSs.

Nor does REX's Amended Complaint provide a factual basis that plausibly shows that Zillow—or any MLS—acted as NAR's agent with respect to the design of Zillow's website. "In Washington, the two elements of an agency are mutual consent, and control by the principal of the agent." *Env't Transportation of Nevada, LLC v. Mod. Mach. Co. Inc.*, 2020 WL 1847747, at *4 (W.D. Wash. Apr. 13, 2020) (cleaned up). REX's Amended Complaint contains no factual allegations that plausibly suggest NAR controls Zillow (or any MLS) as a general matter or that NAR and Zillow (or any MLS) mutually agreed to such control. At best, REX's amended allegations simply conclude, without any factual support, that Zillow and "some" MLSs acted as NAR's agents when they purportedly approved or implemented the changes to Zillow's website. But that is not enough to establish a plausible agency relationship. *See Bastida v. Nat'l Holdings Corp.*, 2016 WL 4250135, at *3 (W.D. Wash. Aug. 4, 2016) (granting motion to dismiss because "Plaintiffs' FAC fails to plead sufficient facts to support their conclusion that defendant had an agency relationship with NSC").

Because REX has failed to establish the causation element of any of its claims, all of the claims against NAR should be dismissed. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) ("To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."); *Steele v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1226, 1230 (W.D. Wash. 2009) ("To establish a CPA violation, the plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in her business or property, and (5) the injury is causally linked to the unfair or deceptive act." (citation omitted)); *Schmalenberg v. Tacoma News, Inc.*, 87 Wash. App. 579, 588-89 (1997) (describing "concepts that have long been part of the law of defamation, including (a) that a statement is

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ — 3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

actionable only if defamatory, and (b) that a causal link must exist between the element of falsity and the element of damages"); *eMag Sols., LLC v. Toda Kogyo Corp.*, 426 F. Supp. 2d 1050, 1056 (N.D. Cal. 2006) ("[A]ntitrust injury is made up of four elements: 1) unlawful conduct, 2) causing an injury to the plaintiff, 3) that flows from that which makes the conduct unlawful, and 4) that is of the type the antitrust laws were intended to prevent."); ECF 98 at 9 n.2 ("The Court recognizes that the state and federal standards are essentially the same [for REX's Sherman Act and RCW 19.86.030 claims] . . . .").

REX has failed to allege facts plausibly showing NAR caused its injuries directly or through some purported agency relationship; indeed, based on its own allegations, it appears REX has only itself to blame. REX claims it was harmed when its listings were relegated to the second tab of Zillow's website because it is not a member of MLSs, *see* ECF 99 ¶¶ 88-92, 116-18, but REX's amended allegations acknowledge that some of REX's listings actually appear on the first tab of Zillow's website, through co-listings with MLS members. *Id.* ¶¶ 127-41. Moreover, after REX's Amended Complaint was filed, new information emerged publicly that REX "sometimes does use MLSs" and will be "trying to join a few MLSs" soon, because it believes joining MLSs "is the right thing to do for [REX's] business and [REX's] customers." Ex. A at 1 (Andrea V. Brambila, *Why REX Pays Buyer Agents and Uses MLSs—Sometimes*, Inman (Oct. 1, 2021)); Ex. B at 2 (Lani Rosales, *REX Homes Has Second Round of Layoffs, Closes NY and CHI Markets, Plans to Join MLSs*, The American Genius (Oct. 8, 2021)).[2] In other words, it appears REX's listings can and do appear on the first tab of Zillow's website, but only when REX wants them to.

There is no valid legal theory under which REX can recover damages caused by its own actions, including its choice to withhold some—but not all—of its listings from the local MLS. *See, e.g., Columbia Broad. Sys., Inc. v. Am. Soc. of Composers, Authors & Publishers*, 620 F.2d 930, 935-37 (2d Cir. 1980) (a practice that is not a per se antitrust violation "does not restrain trade when

---

[2] Exhibit A is available at https://www.inman.com/2021/10/01/why-rex-pays-buyer-agents-and-uses-mlss-sometimes/. And Exhibit B is available at https://theamericangenius.com/housing/corporate/rex-homes-restructure/. These articles are provided for the Court's benefit and background, but are not necessary for this motion because REX's failure to state a claim is shown by its Amended Complaint.

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ — 4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

the complaining customer elects to use it in preference to realistically available marketing alternatives"); *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321-22 (9th Cir. 1997) (district court did not err in denying class certification based on its conclusion that "the bargaining power wielded by the named plaintiffs . . . might have given them opportunities to avoid injury altogether and this, in turn, would have provided the defendants with a defense to the claim of antitrust injury"); *Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, 2007 WL 2318903, at *15 (N.D. Cal. Aug. 13, 2007) (rejecting antitrust claim based on patent pooling agreement because "[plaintiff] was specifically presented with the opportunity to obtain an individual license from [defendant] under the '302 patent but rejected all of [defendant]'s offers"); *W. Goebel Porzellanfabrik v. Action Indus., Inc.*, 589 F. Supp. 763, 766 (S.D.N.Y. 1984) (rejecting "self-inflicted" injuries as a means to establish antitrust injury); *USAirways Grp., Inc. v. Brit. Airways PLC*, 989 F. Supp. 482, 489 (S.D.N.Y. 1997) (accord).

**B.    REX's False Advertising-Related Claims Against NAR (Counts III and V) Again Fall Well Short of the Heightened Pleading Requirements of Rule 9(b)**

The Court held in its September 2 order that the Rule 9(b) standard should be applied to REX's false advertising claims under the Lanham Act and CPA. ECF 98 at 20-24. That heightened standard should likewise apply to the false advertising claims as pleaded against NAR in REX's Amended Complaint, as those claims are premised on allegations that NAR knowingly facilitated misrepresentations about REX by Zillow. *See* ECF 99 ¶¶ 149-51 ("Defendants Zillow and NAR knowingly adopted this labeling system . . . ."), 154-61 ("On information and belief, NAR, through its MLS members and agents, approved of Zillow's decision . . . "), 180-85 ("NAR, through its MLS members and agents, approved of the change . . . ."); *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, 2014 WL 5365514, at *7 (W.D. Wash. Oct. 21, 2014) ("[T]he majority of district courts within the Ninth Circuit" have applied "Rule 9(b) pleading standards . . . to false advertising claims under the Lanham Act," particularly "when the claim relies on factual allegations that necessarily constitute fraud."); *Fidelity Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (finding that plaintiff's CPA claims "sound in fraud" and that plaintiff's allegations were therefore subject to heightened pleading requirements under Rule 9(b)). Because Rule 9(b) applies to its false

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                    5

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

advertising claims, REX must allege the "who, what, when, where, and how" of the alleged fraud, *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), and whenever making allegations "on information and belief," it "must state the factual basis for the belief," *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

REX's Amended Complaint fails to satisfy those requirements. In its Amended Complaint, REX simply asserted the elements of its claims and combined them with conclusory agency allegations. But that is not enough for REX to meet its pleading burden. To state a valid claim, REX must allege, with particularity, which MLS members and agents were acting on NAR's behalf of when they purportedly reviewed and approved Zillow's website change, or why Zillow would allow NAR to control the design of Zillow's website, and it must allege the specific facts that cause REX to believe those other parties were acting on NAR's behalf. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) ("Appellants do allege that Defendants were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment and are legally responsible because of their relationship with their co-Defendants. This is, however, a conclusory legal statement unsupported by any factual assertion regarding YMC's control over YMUS (or regarding any other aspect of the parent-subsidiary relationship), and we accordingly do not credit it." (cleaned up)); *Consortium of Servs. Innovation v. Microsoft Corp.*, 2020 WL 885742, at *3-4 (W.D. Wash. Feb. 24, 2020) (dismissing claims based on agency relationship because the complaint "d[id] not evidence an objective manifestation by Defendant to Plaintiff regarding the authority of Defendant's [alleged agents] to act on Defendant's behalf"). It is not sufficient for REX to simply allege it was harmed by "unspecified people, in a variety of ways, in differing circumstances, using unidentified agents, over an unspecified period of time." *California ex rel. Heryford v. Citigroup Inc.*, 2018 WL 3197905, at *8 (E.D. Cal. June 26, 2018).

At bottom, REX has failed again to allege facts showing "what NAR did to design or encourage th[e] particular labeling system on Zillow's websites, let alone when, where, and how NAR did it"—the same failures the Court identified in REX's original Complaint. *See* ECF 98 at 22, 24. Because REX has not cured those deficiencies, it false advertising claims against NAR should be dismissed.

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

### C. REX Has Failed to State a Defamation Claim Against NAR (Count VII)

In its Amended Complaint, REX has added a new claim against NAR, for defamation, but that claim is likewise unsupported by facts. To plead defamation under Washington law, a plaintiff must identify a false statement and "state[] a plausible basis for attributing [those] specific comments to [the defendant]." *Churyumov v. Amazon Corp. LLC*, 2019 WL 6271728, at *11 (W.D. Wash. Nov. 25, 2019); *see also Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1118 (W.D. Wash. 2011) (dismissing a defamation claim because plaintiff did not "allege[] . . . what statements were actually made by defendant"). The Amended Complaint simply does not allege that *NAR* made any statement, let alone a false one. Its defamation allegations refer only to "Zillow's statements." ECF 99 ¶¶ 202-16.

Stating a defamation claim against NAR would therefore require factual allegations to plausibly support REX's conclusory assertion that "Zillow acted as NAR's agent when it stated that REX homes are not listed by an agent and that REX homes are 'Other Listings.'" *Id.* ¶ 207. But, as previously discussed, REX's thin agency allegations are not remotely plausible or supported with any allegations of fact. *See supra* p. 3.

REX cannot salvage its defamation claim against NAR by alleging that "NAR, through its MLS members and agents, had knowledge of, and approved of, Zillow's statement." ECF 99 ¶¶ 205-06. Aside from the absence of any facts plausibly showing that NAR itself had any knowledge or made any approvals of Zillow's alleged statements, even if REX had alleged that NAR had approved Zillow's statements, that would still be insufficient to state a defamation claim. Under Washington law, "publication" is an element of defamation. *Duc Tan v. Le*, 300 P.3d 356, 363 (Wash. 2013) (en banc). Thus, to state a claim, a plaintiff must allege that the false statement was made and published by the defendant. *McVeigh v. Climate Changers, Inc.*, 2016 WL 4268939, at *5 (W.D. Wash. Aug. 15, 2016). REX simply has not alleged facts plausibly showing that NAR itself made or published the statements at issue, or that it controlled Zillow's actions when Zillow allegedly published the statements REX has challenged.

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ     7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

### D. REX's New Allegations Show REX Does Not Have Antitrust Standing (Counts I and VI)

#### 1. REX Has Failed to Plead an Antitrust Injury Caused By NAR's "Commingling and Segregation Rules"

When there is only an attenuated causal relationship between the defendant's alleged actions and the plaintiff's claimed injuries, the plaintiff has failed to plead antitrust standing and its complaint should be dismissed. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983) (Rule 12(b)(6) dismissal was appropriate because "the chain of causation between the [plaintiff's] injury and the alleged restraint . . . contains several somewhat vaguely defined links"). Here, there is no requisite causal link, as the Amended Complaint's new factual allegations negate the Court's finding that REX had previously pleaded that MLSs have "no choice" but to comply with NAR's "optional" rule. *See* ECF 98 at 12.

In its Amended Complaint, REX now concedes that only "some" MLSs have adopted the "commingling and segregation rules" that "required Zillow to make changes to its display products, including moving of REX listings to 'Other Listings.'" ECF 99 ¶¶ 82-83. As those allegations show, some MLSs affiliated with NAR permit commingling of MLS and non-MLS listings data. In other words, REX now admits that MLSs have a choice, and many of them have decided to allow commingling. Unlike the "mandatory compensation rule," which must be followed by all MLSs affiliated with NAR, *see* ECF 99 ¶¶ 7, 82, there is no allegation that all NAR-affiliated MLSs must prohibit commingling. That means there is no non-conclusory allegation that Zillow changed the design of its website to comply with NAR's rules or rules that were adopted by all MLSs because they were required to adopt them by NAR. It is thus implausible from REX's allegations that ***all*** MLSs mandated a prohibition on commingling, requiring changes to Zillow's website design.

These factual allegations distinguish the "commingling and segregation rules" at issue in this case from the trade association rules in other cases that were labeled "optional" in name only because all trade association members had no choice but to follow them, and did follow them. *Compare Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 570 (1982) (organization that promulgated "so-called voluntary standards" was "in reality an extra-governmental agency, which prescribes rules for the regulation and restraint of interstate

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                 8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

commerce"), *with Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989) (when a standard setting body "provides information . . . but does not constrain others to follow its recommendations, it does not violate the antitrust laws").

### 2. REX Has No Antitrust Standing to Challenge the "Mandatory Offer of Compensation Rule"

While REX discusses the "mandatory offer of compensation rule" and the cases challenging that rule (*Moehrl* and *Sitzer*) in its Amended Complaint, *see* ECF 99 ¶¶ 7, 33, 38, 73, 82, 121 n.13, REX actually does not allege that it is harmed by that rule. The Amended Complaint instead claims that REX has suffered injury by Zillow's labeling system, *see id.* ¶¶ 152, 162, 172, 177, and by the "co-mingling rules," *see id.* ¶ 200, but it attributes no injury to the "mandatory offer of compensation" rule. Indeed, tellingly, REX's prayer for relief does not seek to end the "mandatory offer of compensation rule." *See id.* Part IX.

This omission is not an oversight. REX cannot claim that the "mandatory offer of compensation rule" has caused it to sustain an antitrust injury. It is black letter law that a plaintiff-competitor does not have antitrust standing to challenge conduct by its competitors that ***increases*** prices because such a plaintiff would stand to benefit from the alleged violation of the antitrust laws. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582–83 (1986) ("Nor can respondents recover damages for any conspiracy by petitioners to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, but it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price . . . ." (citations omitted)); *Atl. Richfield Co. v. USA Petroleum Co.* (*ARCO*), 495 U.S. 328, 336–37 (1990) ("Respondent was *benefited* rather than harmed if petitioner's pricing policies restricted ARCO sales to a few large dealers or prevented petitioner's dealers from offering services desired by consumers such as credit card sales. Even if the maximum-price agreement ultimately had acquired all of the attributes of a minimum-price-fixing scheme, respondent still would not have suffered antitrust injury because higher ARCO prices would have worked to USA's advantage."). Indeed, the Ninth Circuit has expressly recognized that "[t]here can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct." *Am. Ad Mgmt., Inc. v. Gen.*

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ   9

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

*Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999).

Like the plaintiffs in *Matsushita* and *ARCO*, REX does not have antitrust standing because it stands to benefit from any alleged preservation or inflation of brokerage commissions purportedly caused by the "mandatory compensation rule." And that is exactly what REX claims; that the "mandatory offer of compensation rule" has "preserve[d] sky-high real estate fees across the United States," ECF 99 ¶ 33, and quotes another district court's statement that the rule "could plausibly result in inflated commission rates," *id.* ¶ 38. These commission rates include the rates that REX charges. Thus, regardless of whether the "mandatory compensation rule" could harm competition by increasing real estate brokerage commissions, a real estate brokerage like REX does not have standing to bring that claim. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("We therefore hold that [for] the plaintiffs to recover treble damages on account of § 7 violations, they must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.").[3]

### 3. REX's "Demotion" Theory Is Insufficient as a Matter of Law to Establish Antitrust Standing

REX's amended allegations show that NAR's actions have not meaningfully limited consumers' ability to use REX's services. Notwithstanding the changes to Zillow's website, the Amended Complaint confirms that REX can still access MLSs and Zillow, and consumers are still free to retain REX to sell their homes. ECF 99 ¶¶ 39-45. Consumers can go directly to REX, "list their homes from their smartphones[,] and see their listing go live within two days." *Id.* ¶ 40. In

---

[3] *See also ARCO*, 495 U.S. at 334, 339 n.8 ("A private plaintiff may not recover damages under § 4 of the Clayton Act[, 15 U.S.C. § 15,] merely by showing injury causally linked to an illegal presence in the market."); *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1033, 1036 (9th Cir. 2001) ("It is not enough . . . to show that defendants violated the law and that the plaintiffs suffered a causally related injury."); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433, 1444 (9th Cir. 1995) ("The mere presence of a *per se* violation under Sherman Act § 1 does not by itself bestow on any plaintiff a private right of action for damages. A plaintiff must prove that his injury flows from the *anticompetitive* aspect of the defendant's conduct." (quotation marks omitted)).

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                    10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

fact, the Amended Complaint shows REX even publicizes certain listings on the local MLS and on the first tab of Zillow's website. *See supra* p. 4.

REX's only claimed antitrust injury is that some of its listings were "demoted" after Zillow implemented its two-tab website design. *See* ECF 99 ¶ 96. But the Ninth Circuit held that such a "demotion" theory is not sufficient to establish antitrust standing. In *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554 (9th Cir. 2008), the plaintiff, a putative competitor to MySpace, alleged it had sustained injury when MySpace redesigned its website. Specifically, the plaintiff claimed that "disabling links on MySpace.com to other social networking websites reduce[d] consumers' choices in the relevant market, thereby diminishing the quality of consumers' social networking experience." *Id.* at 557. The Ninth Circuit affirmed the district court's Rule 12 dismissal of the complaint and rejected the plaintiff's theory of injury because it had failed to "explain how MySpace's actions on its own website can reduce consumers' choice or diminish the quality of their experience on other social networking websites" when there was "no allegation that MySpace has prevented consumers from accessing vidiLife.com (or any other social networking website)." *Id.* The Court observed that "it would be impossible for MySpace to do so: any consumer desiring such access need only type 'vidiLife.com' into the address bar of his or her web browser, or into a search engine such as Google." *Id.* "All MySpace has done," the Court reasoned, "is prevent consumers from accessing vidiLife.com *through MySpace.com*," *id.*, which was not enough for the plaintiff to meet its burden. Because "[c]onsumers remain[ed] free to choose which online social networks to join, and on which websites they upload text, graphics, and other content," the Ninth Circuit held that the plaintiff had failed to allege causal antitrust injury, and therefore lacked antitrust standing. *Id.*

The Ninth Circuit's analysis in *LiveUniverse* maps directly on to REX's amended allegations. At best, REX has alleged that Zillow, an alleged competitor to REX in the provision of real estate brokerage services, ECF 99 ¶ 133, made it harder for consumers to reach REX's website and listings from Zillow's own website. Consumers can still navigate directly to www.rexhomes.com—where REX does not commingle its listings with those of other real estate agents—search for REX listings on Google, or view REX's listings through the second tab on

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ         11

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

Zillow's website. And consumers, of course, remain free to choose which agents to use when selling their homes, including REX agents. Considering this, there are not factual allegations plausibly showing that the design of Zillow's website or any of NAR's actions caused REX's business may to decline, which means it has failed to allege antitrust standing.

## CONCLUSION

NAR respectfully requests that the Court dismiss all claims against NAR and that the Court dismiss Counts III and V with prejudice.

DATED: October 14, 2021

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Thomas C. Rubin*
Thomas C. Rubin, WSBA #33829
1109 First Avenue, Suite 210
Seattle, WA 98101
Phone (206) 905-7000
Fax (206) 905-7100
tomrubin@quinnemanuel.com

Ethan Glass (*pro hac vice*)
Michael D. Bonanno (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Tel: 202.538.8000
Fax: 202.538.8100
ethanglass@quinnemanuel.com
mikebonanno@quinnemanuel.com

*Attorneys for Defendant National Association of REALTORS®*

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ    12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2021, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to counsel of record.

DATED: October 14, 2021

>   */s/ Thomas C. Rubin*
>   Thomas C. Rubin, WSBA #33829

NAR'S MOTION TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ — 13

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000